19-6327 Ronald Ogle v. Sevier Cnty Rgnl Planning Commission Argument not to exceed 15 minutes per side Mr. Brown, you may proceed for the appellant. Good morning. Good morning. Thank you. I may have pleased the court. I'm Greg Brown, attorney for the Appellant-Hybrid Development Partnership here. The issue before the court today is probably the most important issue, is whether or not a party has a protected property interest upon approval of a concept plan by a local authority. The parties here, the plaintiffs and the appellants here are developers who purchased 900-some-odd acres of land adjacent to the Great Smoky Mountains National Park. They paid in excess of $5.6 million for it. One of the investors in that project was a developer named Miller, who had developed four phases of a development along Scottish Highland Way. This proposed development was also to be on Scottish Highland Way. Mr. Miller's involvement in the project and his prior experience in gaining approval for those four phases of the Miller's Cove development was one of the things that the evidence and trial showed drove the developers' investment in this project. There were no variances for the four phases of the Miller's Cove development, and the access was deemed to be adequate. Mr. Brown, can I just ask a fact question that is a real curiosity to me? I think it's unrealistic for someone to just go in there and widen this particular stretch of the road. Is that just unrealistic given the terrain? I think it's legally unrealistic. The issue is that this short section that may be 40 feet was deeded to the federal government to be part of the Foothills Parkway. It belongs to the federal government, and they've not been amenable to allowing the access across it to be widened. I see. That section is actually 40 feet or not, but the position of the Planning Commission is that it was 40 feet for that very short section. I think we're talking about 800 feet or so where it goes through the Foothills Parkway. That was never an issue for the development of the Miller's Cove. The Planning Commission had approved four phases of that. There were no variances noted anywhere. In fact, the chairman of the commission admitted in testimony at the trial of this matter that there were no variances for those four phases of the Miller's Cove development. The appellants here, after first having their plan disapproved, went before the Planning Commission again in April of 2007, and there was a roll call vote, and the concept plan was approved just as it happened. Wasn't there a factual issue there, though, that originally the concept plan was denied, and then the Southern Design Group and the partnership presented this 1971 recorded plat that supposedly depicted a 50-foot right-of-way? Wasn't that the basis of the approval of the concept plan? The basis was additional evidence, including the plat that you're referring to, that the access was that the right-of-way was, in fact, 50 feet. That's correct. The concept plan had been disapproved at the March 2007 meeting. They came forward with some additional evidence, and it was approved. I don't think there's any dispute that at the April 2007 meeting, the Planning Commission did pass and approve this concept plan. The question for the court there is whether that created in the appellants a protected property interest, such that they were entitled to both procedural and substantive due process and equal protection of laws going forward. Go ahead, Judge Strange. When you have a Planning Commission issue and you're at this preliminary stage, tell me why that would vest the property interest and rights when you know that there is also a subsequent requirement for approval of a plan design and also a subsequent require for approval of a final plat, and both of those are stated as if any action is taken before the approval of that final plat, then it is at the risk of the developer. The issue here is that at each stage, there are three phases of approval to get a development built, and at each phase of the process, certain aspects of the development are approved. It is at this first concept plan stage that issues such as right-of-way, roads, preliminary layouts, all of that have to be approved by the Planning Commission. Once they get past that stage, they're moving on to design documents. The testimony at trial was once you get concept approval, that's when the developer really starts spending money. That's when they start designing and engineering the roads that have been approved in concept already. That's the expectation is that they can move forward with their concept, with the details of their design, and the next stage of the approval process does not revisit the concept, the layout of the roads, the access and the right-of-way. It visits, perhaps for the first time, the interior structure of the roads. I guess my part of the record here indicates that Miller's development had 10 houses in one or 15, very small, but this one is, what, how many closer to 1,900 maybe? Does that play a role in the discretionary approval of the Planning Commission based on the traffic and roads that have to be generated for that size development? If the zoning regulations give them discretion regarding what size roads need to be approved, however, for both Miller's Cove and for this development, the requirement was, according to the county, 50 feet. It's the same requirement applicable to both. And our position is that that discretion, to the extent they have it, it ends once they've given their approval. To the extent they had discretion prior to their vote in the April 2007 meeting, once they voted, they no longer have discretion to reject the concept and the development for those reasons. What if they'd made a mistake? What if there's a misapprehension? Their power is specifically described, is granted by the subdivision regulations, and this is what it says. It says, within 60 days after submission of a concept plan, the Planning Commission will review it and indicate its approval, disapproval, or approval subject to modifications. There is nowhere in the subdivision regulations that the Planning Commission is ever given authority to revisit and revoke approval of a development plan or a concept plan. And so I think that there may be other reasons at other stages of the approval process where other issues may have come up. But they don't have discretion once they approve it. Their obligation is to do their homework to consider the factors they need to consider and make that evaluation prior to granting approval of the concept plan. Judge Sutton, if I could ask Mr. Brown some questions, I would help me understand how this could even be ending up in federal court. It just strikes me as a case that it's probably just the right kind of thing, an initial review of local action in the state court. So you've got equal protection. Candidly, the equal protection argument is kind of weak. You've got substantive due process where you have to have either violation of some substantive provision of the Bill of Rights, such as equal protection, or some sort of fundamental right, like the right to choose whether to give birth or something like that. But the right to have a development considered probably doesn't rise to that kind of right. So what you're really left with, from my perspective, and I don't want to decide those other arguments, I'm just having trouble seeing them a little bit. But the argument where you might have some purchase is that there's been a violation of procedural due process. Normally, for procedural due process, you've got two steps. First, you've got to find a property interest or a liberty interest, but here you're talking about a property interest. And the property interest is the problem. But a property interest is not necessarily just when the state says this is vested. The property interest is when you have some right to something depending on certain facts, and you're arguing that you don't have the chance to demonstrate those facts. You're either entitled to a benefit or you're entitled, for instance, to develop this area if fact one, fact two, and fact three are there. And I've never been given a chance to prove fact one, fact two, and fact three. Maybe I didn't get noticed when they decided fact one, fact two, and fact three. Are you with me? I am with you. Okay. So I'm trying to see how you would fit your case into traditional procedural due process stages of analysis because that's what we're mostly used to when we get it. And I think I would understand better what you claim your property interest is if you gave us a preview of what procedures were denied. Yeah. Now I'm having a little bit of a problem. I mean, you say that you received notice of a – you didn't receive notice of a meeting on May 8th, but you did receive notice of later meetings before the decision was made. So what exactly is the procedure that you're saying you were denied when certain kinds of facts, which if shown would give you the right that you're seeking, were determined? Are you with me? I am with you. The procedural due process argument has to do with the May 8th meeting, which is where the Planning Commission purported to rescind the approval that it had previously given on April 8th. It approved the concept plan in April of 2007. At a subsequent meeting in May, it was added to the agenda again during the meeting, and there was a vote to rescind the prior approval. How would, under the second stage of applying Matthews v. Eldridge, how would your receiving notice of that particular meeting help preserve your ability to demonstrate facts that would show that you're entitled to this approval? Well, the issue of whether or not there was a 40- or 50-foot right-of-way was factually in dispute. My party's – at the previous meeting, people had presented evidence that it was, in fact, 50 feet. So they've denied you. They've denied you the chance to show the truth? Prior to their vote to rescind the previous – How about afterwards? Afterwards, were you denied an opportunity to show it was 50 feet all along? No, they attended later meetings, and they had the opportunity to reapply for approval of the concept plan. But it doesn't change the fact, similar to the tri-court management case and the Buckeye case that we cited in our briefs, where this court previously held that once you have approval, that is a protected property interest, and it can't be taken from you. Well, it can't be taken from you without procedural protection. The procedural protection is for you to say you made a mistake. It's 50 feet wide all along, and you haven't done that. And I don't think they've denied you that opportunity. Well, they did it once. They did it – remember, it was denied the first time in March, and they went back and proved it again in April. And at that point, there is no procedure. There's no law. There's no method by which the planning commission can reopen and rescind that approval. And so they did have that opportunity, and they sustained their burden of showing it to the planning commission. And that's the point. Let's hear from Ms. Bradshaw, and you'll get your full five minutes of rebuttal. Thank you, Your Honor. Go ahead, Ms. Bradshaw. Your Honors, what we are arguing is, first of all, his argument about a protected property interest was never argued below at the trial court. And even assuming they had a protected property interest, the plaintiff, Mr. Schubert, testified several times that there was no guarantee when he purchased this mountain that he could develop it. He did not know if he could develop the property. He knew it had a 40-foot right-of-way across the federal property. And he didn't know – again, with the equal protection – he didn't know of any other development that was treated differently from Highbridge. Ms. Bradshaw, how do you respond to his main argument that the reason he has a claim here, whether it's substantive or procedural due process, is that approval was given, and the commission did not have rescission authority? That seems to be his main argument. It does look like the regulations are silent about this idea that they can change their mind. The commission rules and regulations give them the authority to look at any concept plan, approve or deny it. And in this instance, it was denied the first time, approved the second time, because plaintiffs brought in a deed that said it had a 50-foot right-of-way. And then the commissioners got concerned about the fact that they wanted to get this right because somebody had brought up Millers Creek. Millers Creek was a very small subdivision, and it had 15 houses. It was developed in three stages, three houses at a time. Everybody thought they had a variance, and it came out they did not have a variance for the 40-foot right-of-way. And the commission was concerned that they did not want to make another mistake. They had a county attorney. Ms. Bradshaw, just to be clear, I think we all understand the mistake point. I think he's making the point, tough luck. You know, the commission can only act as given authority, and where's the authority to change their mind? It's in the subdivision regulations, but the regulations of the planning commission. And the plaintiff has never shown an entitlement to having their plan approved, ever. And the planning commission, you've got three steps once you approve, if the concept plan is approved. You've got to come back and show the infrastructure and everything else. They can deny it then, too, as well. And then there's a final plan. So just because you get your concept plan approved doesn't mean it's going to be approved in the second and third phase. Well, as far as counselor's procedural protections, was this entity not noticed that their provision, their work, would be taken back up at the May 8th planning commission? That is part of the argument, Your Honor, whether they were told that or not. Because in between the last meeting and the next meeting, the planner had met with Mr. Schubert regarding this difficult right away and what to do with it. They met with the park service, so he knew that there was an issue. He knew that there was a problem. The problem had been there all along, and then they had looked at his deed, supposedly, and found that that was no longer in force. So whether he had formal notice or not is an argument, but he did have informal notice that this was probably going to be rejected now since there was no 50-foot right of way. Mr. Schubert then, at the next meeting where it was rescinded, Highbridge came back again after talking with everybody a year later and was going to request a variance subsequent to what was assumed that Miller's Creek had, and their partner took it off the agenda. Nothing was done. Nothing was done from May 2008 to December 2008 when they heard this case again, and based on what the county attorney had found, National Park Service testimony. Ms. Bradshaw, if I could ask a question. If the key violation of procedural due process alleged is this May 8th meeting, I guess the idea is they didn't have a chance to challenge the factual findings with regard to whether there was a violation of the 40-foot rule or the 50-foot rule. Was there other opportunity for them to challenge that, or was that the end, but that was final? No, they could have brought that back at the next meeting 30 days later. So, if you're right that they could have brought that back later, then when we're balancing these issues in the second stage of procedural due process, you say they would lose because there was plenty of opportunity for them to make that argument before it was definitively decided against them. Is that correct? Correct. Does the record reflect that they, in fact, resubmitted the concept plan? Because that was May 8th of 2007, and between May 8th of 2007 and December of 2007, my understanding was that the partnership met with ONB, discussed a variance, and then resubmitted the concept plan without applying for a variance, but that the partnership then removed it from the commission's agenda at the meeting on which they had requested it be taken up. Is that an accurate reflection of the record? The meeting where it was rescinded, your honor, was May 2007? Yes. It was not brought back again until May 2008, and that's where Pinebridge was going to request a variance, and then they removed it from the agenda. It wasn't heard again until December 2008. They did not request a variance at that time. They just argued again that they had a 50-foot right-of-way across the federal park. That was denied after… So, in December of 2008, when it came back to the commission, your memory is that there was no resubmittal in the 2007 timeframe? Correct. Okay, thank you. And then there was nothing until 2018, after December 2018. But the Highbridge Development Group had met with the planner many times to try to get this worked out, and they never submitted another concept plan. Until December of 2008? Correct. Thank you. The Crown Court found that there was no property interest because there was no entitlement to getting this plan approved. And then also stated that even if you assume they have property interest and the plan was approved, the Planning Commission was not arbitrary and capricious in their decisions in that they had relied on… The plaintiffs and their groups… Ah, what happened? I'm sorry. I somehow got out of your meeting. We can still hear you. We hear you. You've got six minutes. I can't see you. We're still here. We're still here. Just keep talking. So, after Kieberts had come in and decided that he was no longer… Well, I don't know if he was smart, he decided, because in his testimony at trial, he kept saying he didn't know whether he could make this development or not. Nothing happened with the Commission. They never resubmitted these concept plans. Nothing until many, many, many years later. And we… He was… He had the opportunity many times to come before the Planning Commission. They listened to everything. They based their foundation and decision on all the information that they had. And again… So, Ms. Bradshaw, if I could cut to the chase, because I'm not sure I can call it all of that, I regret. But if the key denial of… Alleged denial of procedural due process was not getting notice of this May 8, 2007 meeting, you're now saying that anything that he might have wanted to raise at that meeting, he could have raised at later points in the process. Is that true? Yes, he could have come back. What would be one or two examples of where he could have raised it later in the process and protected his alleged property interest? He could have had that issue put back on the agenda at the June 2007 Commission meeting. One month later, in other words. Right. Is that the main one that you think? Well, he could have done it any time, but the next meeting was going to be… I see. Thank you. But keep in mind, Your Honors, in the meantime, he's talking with the planner again about how to get this process going. I don't have anything else to argue other than to say that we believe the trial court was correct, and that he's waived his argument with regard to protected property interest, and that there was no violation of procedural, substantive, or due process or equal protection rights, based on mainly Mr. Schubert's own testimony. All right. Thank you, Ms. Bradshaw. We appreciate your argument. Mr. Brown, rebuttal. Yes, thank you. I'll address serially those arguments. The first one regarding waiver. As we cited in our brief, we argued the issue of a property interest in our trial brief. We presented evidence on it, and I think, perhaps most importantly, the trial court, in its order denying the appellant's motion to alter or amend, said this. Plaintiffs state that they are not asking the court to alter its ultimate conclusion, that they have no protected property interest, or that defendants did not violate plaintiff's due process or equal protection rights. Plaintiffs reserve these issues for appeal. That was acknowledged by the trial court in an order, and that's in the record on document 118 at page ID 2005. So, I think the issue of waiver or not raising these issues in the trial court below is clearly not correct. Let me ask you about post-deprivation process provided. You met, did the partnership continue to meet with the Sevier County planner, I think, Owen B., after May 8th? Yes. It's my understanding that that did happen. They met with Mr. Owen B. prior to, during the development of their concept plan, prior to presenting it to the planning commission. They met with him right up through the point where they obtained approval of the concept plan from the planning commission. And I'd like to just, the cases that this court has issued on that issue, there's one, they said in the trial court case, this court recently acknowledged that a developer has a legitimate property interest in a zoning permit when the zoning permit complied with the existing regulations, as opposed to requiring a special use permit or conditional use permit, and the site plan had already been approved. That's the Tri-City case that was citing the Buckeye Community Hope Foundation case, where the court said that in the case of Barr, plaintiff's property interest was securely vested upon the city's affirmative representation that the site plan conformed with the existing zoning regulations as reflected by the city's approval. And you had not reached the site plan stage in this one, isn't that correct? That's correct. We were at the concept plan stage. But to the extent that the concept plan had been approved, the elements of the development that were inherent in that concept plan, the developer had a property interest in being able to carry forward with the plan to the extent that it had been already approved. Let me ask you, my question really honed in on post deprivation procedural due process, and your response said that you had met with O&B regularly, but you did in fact meet with him on some occasions after the denial, right, after the May 8 meeting that rescinded the approval. Your Honor, I cannot point to anything in the record at this moment, but my understanding is that that is the case. Thank you. And am I incorrect in my understanding that in 2007, the concept plan was resubmitted without applying for a variance, but then it was removed before the commission agenda was taken up at the actual meeting? Again, my understanding is that that happened in December of 2007 after the rescission of the approval. And the 2008 process that we're discussing was where they actually took up the concept plan again and denied it at a hearing, right, December 9 of 2008, right? Yes. Thank you. One other thing I'd like to point out is that the court's decisions on this issue in prior decisions have focused on substantive due process, and I understand the commission's argument regarding a mistake, that the Miller's Code approvals were a mistake, and therefore, they didn't want to make that same mistake again. The problem is that they approved this concept plan, and the position of our client before that approval and after that approval is not distinctive from the Miller's Code. In each situation, there was an approval of a concept plan, mistake or not, and it created a property interest that the developer is entitled to protection for. So, your position would be that post deprivation procedures cannot correct a mistake once it's been made for one entity, a planning commission is not able to correct it for a subsequent entity? No, I think that the planning commission had the discretion at the April 2007 meeting to reject the concept plan if they determined that the prior ones had been a mistake and they were not going to approve it. That is not what they did. They approved it. I see my time is up. Unless there are any questions, I'll... Thank you. Thank you, Mr. Brown. Thank you, Ms. Bradshaw. We appreciate your briefs and arguments. Thank you for answering our questions, which we particularly appreciate. The case will be submitted, and the clerk may adjourn court.